**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 30, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RODNEY McINTOSH,

Defendant-Appellant.

No. 13-3065
(D.C. No. 2:11-CR-20085-KHV-1)
(D. of Kan.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.[**]

Rodney McIntosh was convicted by a jury of eight counts of forcibly

assaulting prison employees during his incarceration at the United States

Penitentiary in Leavenworth, Kansas. For these offenses, the district court

sentenced McIntosh to 144 months of incarceration. On appeal, McIntosh

challenges the district court's decision to deny his pretrial motion to dismiss the

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

indictment and alleges that his sentence was procedurally and substantively unreasonable. We affirm.

## I. Background

While in custody at Leavenworth, McIntosh made a habit of projecting liquids—allegedly including urine, feces, and saliva—onto corrections officers and other prison personnel. Each of the incidents underlying the eight counts of assault involved some version of McIntosh forcibly inflicting fluids onto employees of the Bureau of Prisons (BOP). Beyond that general level, the specifics of each incident are largely irrelevant to our disposition of this appeal, and we introduce facts below as needed.

After the government charged McIntosh with nine counts of assaulting government officials under 18 U.S.C. § 111(a)(1), McIntosh filed a motion to dismiss the indictment on the grounds that the government violated his due process rights by destroying allegedly exculpatory evidence when the BOP employees failed to preserve soiled clothing following each assault. The district court conducted a hearing and denied this motion, finding the evidence was not exculpatory and there was no evidence of the government's bad faith in disposing of the clothing.

Following a jury trial, McIntosh was convicted of eight of the nine assaults charged in the indictment. The parties presented sentencing briefing, and, after a hearing in which McIntosh acted *pro se*, the district court sentenced McIntosh to

144 months in prison. This sentence included a two-level enhancement for obstruction of justice based on McIntosh's perjurious testimony at trial. In addition, the district court opted for an upward variance from the United States Sentencing Guidelines range of seventy to eighty-nine months due to a variety of factors, including (1) McIntosh's threatening statements toward officers and their families during the assaults, and (2) McIntosh's post-conviction disruptive conduct.

## II. Analysis

We first address McIntosh's challenge under the Due Process Clause before turning to his contentions regarding the alleged procedural and substantive unreasonableness of his sentence.

### A. Due Process Violation

We review for clear error "the district court's conclusion that the government did not destroy potentially exculpatory evidence." *United States v. Bohl*, 25 F.3d 904, 909 (10th Cir. 1994). "The inquiry into allegations of prosecutorial bad faith presents a mixed question of fact and law in which the quintessential factual question of intent predominates." *Id.*

A due process violation occurs when the government fails to preserve constitutionally material evidence. *California v. Trombetta*, 467 U.S. 479, 488 (1984). Under *Trombetta*, evidence is only constitutionally material when (1) its exculpatory value was "apparent before the evidence was destroyed" and (2) it is

"of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489.  If the evidence is only "potentially useful," rather than exculpatory, the government only commits a due process violation when it destroys the evidence in bad faith.  *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

The parties dispute the probative value of the soiled clothing.  On the one hand, the government contends that the identity of the substance was irrelevant to the crimes charged for assault of a government employee.  *See* 18 U.S.C. § 111(a)(1).  According to the government, the nature of the substance as a bodily fluid is not a component of the offense.  On the other hand, McIntosh argues that the crude nature of the substance was repeatedly emphasized by the government at trial to underscore the offensiveness of the physical contact.

To sustain a felony conviction under § 111(a)(1), the government was required to prove that McIntosh intentionally forcibly assaulted an on-duty government official through physical contact that would offend a reasonable person.  *United States v. Hathaway*, 318 F.3d 1001, 1007–08 (10th Cir. 2003).  Regardless of what the substance later turned out to be, the act of throwing an unknown substance onto a BOP official clearly causes the offensive physical conduct outlined in the statute.  Moreover, the victims testified that the substance smelled of bodily fluids, and they were subject to cross examination and their credibility was challenged.  Thus, while we cannot definitively say, as the

-4-

government suggests, that the identity of the substance was *entirely irrelevant* as an evidentiary matter, we are convinced that any evidentiary value of the officers' soiled clothing could not rise to a level that would exonerate McIntosh. That is, the evidence may have been "potentially useful," but it was not exculpatory. *See Youngblood*, 488 U.S. at 58.

Since the evidence was not exculpatory, McIntosh must prove that BOP officials washed or otherwise "destroyed" the clothing in bad faith. *See Bohl*, 25 F.3d at 911 (identifying factors to consider in establishing whether evidence was destroyed in bad faith). Based on our independent review of the record, we see no evidence that prison personnel intentionally destroyed or tampered with the evidence. The government's innocent explanation that the clothing was not preserved as part of standard BOP procedures for disposing of biohazardous materials, not to mention the evidence's merely cumulative relevance at trial, demonstrates that there were no pernicious motives at play in the handling of this evidence. *See id.* at 911–13. If stretched, the most we could say is that the government was negligent in failing to preserve this evidence despite its potential usefulness—but negligence is not sufficient to establish bad faith. *United States v. Pearl*, 324 F.3d 1210, 1215 (10th Cir. 2003).

In light of the standard of review, moreover, we certainly do not regard the district court's finding as clearly erroneous. We conclude there was no due process violation.

### B. *Sentencing Challenges*

McIntosh also challenges the procedure and substance of his sentencing. We reject both of his challenges.

### 1. *Procedural Reasonableness*

Because McIntosh failed to contemporaneously challenge the district court's sentencing procedure below, we review his claim that the sentence is procedurally unreasonable for plain error. *United States v. Gantt*, 679 F.3d 1240, 1256 (10th Cir. 2012). To establish plain error, McIntosh must demonstrate the district court (1) committed error, (2) the error was plain, and (3) the plain error affected his substantial rights. *United States v. Cotton*, 535 U.S. 625, 631 (2002). If these factors are met, we may exercise discretion to correct the error only if it seriously implicates the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 631–32. McIntosh alleges four separate claims of procedural unreasonableness, and we address each in turn.

First, McIntosh claims error in the district court's decision to accept a two-level obstruction-of-justice enhancement based on McIntosh's alleged perjury at trial. In particular, McIntosh contends that the district court failed to properly set forth the factual basis for this enhancement. The Supreme Court, in *United States v. Dunnigan*, found that perjury worthy of an obstruction-of-justice enhancement occurs when "[a] witness testifying under oath or affirmation . . . gives false testimony concerning a material matter with the willful intent to provide false

testimony, rather than as a result of confusion, mistake, or faulty memory." 507 U.S. 87, 94 (1993).

We have required that "a district court be explicit about which representations by the defendant constitute perjury." *United States v. Hawthorne*, 316 F.3d 1140, 1146 (10th Cir. 2003). This requirement enables us to review the allegedly perjured testimony without speculating about the rationale for the enhancement. *United States v. Massey*, 48 F.3d 1560, 1574 (10th Cir. 1995).

While the district court could have done more under *Hawthorne* and *Massey*, under the third prong of plain error review, we cannot say that the lack of specificity affected McIntosh's substantial rights. *See United States v. Flonnory*, 630 F.3d 1280, 1288 (10th Cir. 2011). Based on our independent review of the record, the evidence of McIntosh's perjury at trial is abundant, and we fail to see how the absence of a detailed inquiry into the perjury by the district court prejudiced McIntosh. In short, "in light of the clear evidence of perjury, it would be surprising if [McIntosh's] sentence would be any different if we reversed and remanded for resentencing." *Id.*

Second, McIntosh finds fault in the district court's factual support regarding McIntosh's threats to victims and victims' families, which in part justified the upward variance. Unlike the allegations of obstruction of justice, the district court explained in its Statement of Reasons that "the evidence that the defendant made threatening statements toward at least one victim that referenced

the victim's family," partially supported a departure from the Guidelines.  R., Vol. III at 35.  As we see it, substantial evidence in the record justifies this factual conclusion, and, while providing more extensive factual justification is the better practice, we cannot say that the district court erred.  *See United States v. Johnson*, 973 F.2d 857, 859 (10th Cir. 1992).

Third, McIntosh asserts that the district court erred by failing to make specific factual findings regarding McIntosh's post-conviction disruptive conduct. Like the threats to victims and their families, the district court enumerated McIntosh's post-conviction conduct as a reason for the upward variance.  *See* R., Vol. III at 35 ("[T]he court has considered the defendant's post-conviction conduct, specifically the defendant's assaultive and/or disruptive conduct directed toward correctional officers at the Corrections Corporation of America, subsequent to the defendant's trial in the instant case.").  And because the evidence likewise supports this conclusion, the district court did not err in using these facts as partial grounds for the upward variance.

Fourth, McIntosh contends that the district court failed to give a sufficient explanation for how it weighed all of the sentencing factors under 18 U.S.C. § 3553 prior to issuing its decision.  To be sure, the sentencing court must "adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range."  *Gall v. United States*, 552 U.S. 38, 51 (2007).  But in this case, the district court provided sufficient explanation—both

on the record at the sentencing hearing and in its Statement of Reasons—to defend the above-Guidelines sentence. Thus, the district court's "reasoning and analysis . . . give us 'reasonable indicia that the sentence . . . is proportional to the crime committed'" in light of the criminal history. *United States v. Proffit*, 304 F.3d 1001, 1012 (10th Cir. 2002) (alteration omitted) (quoting *United States v. Kalady*, 941 F.2d 1090, 1101 (10th Cir. 1991). We see no error, let alone plain error, in the district court's holistic application of § 3553.

In sum, under the circumstances, "[w]e will not make the useless gesture of remanding for reconsideration" of the procedural reasonableness of McIntosh's sentence. *United States v. Rines*, 419 F.3d 1104, 1107 (10th Cir. 2005).

### 2. *Substantive Reasonableness*

We evaluate claims of substantive unreasonableness for an abuse of discretion. *United States v. Navarrete-Medina*, 554 F.3d 1312, 1313 (10th Cir. 2009). "[A]n extreme divergence from the advisory Guidelines range will be reasonable if the facts of the case are dramatic enough to justify such a divergence." *United States v. Mateo*, 471 F.3d 1162, 1169 (10th Cir. 2006) (internal citation and quotation marks omitted). In evaluating the reasonableness of a departure from the Guidelines, we look "at the divergence in terms of both percentage *and* absolute time." *United States v. Valtierra-Rojas*, 468 F.3d 1235, 1240 (10th Cir. 2006).

As McIntosh points out, the district court's sentence was at least seventy months and 65% longer than the high-end of the Guidelines. While we acknowledge that this degree of divergence is substantial, we find that the district court provided compelling justifications for its departure. *See id.* at 1242. In the process of balancing the factors under § 3553(a), the district court reasonably departed from the Guidelines on account of, among other factors, the circumstances underlying the offenses, the multiple counts of similar conduct, and McIntosh's extensive criminal history. All things considered, and appropriately deferring to the district court's advantages at the sentencing phase, *see Gall*, 552 U.S. at 52 n.7, we cannot conclude that the district court's imposition of a 144-month sentence was substantively unreasonable.

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court's decision.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge

-10-